UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANN LINAN,<br><br>        Plaintiff,<br><br>    v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>        Defendant. | No. 1:20-cv-00525-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**<br><br>**(Doc. 16, 19)** |

### I.     Introduction

Plaintiff Joann Linan ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1] *See* Docs. 16, 19, 20. After reviewing the record the Court finds that substantial evidence and applicable law support the ALJ's decision. Plaintiff's appeal is therefore denied.

### II.     Procedural Background

On March 10, 2017 Plaintiff applied for disability insurance benefits alleging disability as of April 1, 2016 due to neck nerve damage, bilateral shoulder nerve damage, bilateral hip problems, bilateral elbow problems and spine problems. AR 178–79; 238. The Commissioner denied the application initially on July 26, 2017, and on reconsideration on December 14, 2017. AR 107–12; 114–20.

Plaintiff requested a hearing which was held before an Administrative Law Judge (the

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 8 and 9.

1

"ALJ") on September 11, 2018. AR 38–69. Plaintiff was represented by counsel at the hearing. AR 38. On February 21, 2019 the ALJ issued a decision denying Plaintiff's application. AR 14–36. The Appeals Council denied review on February 19, 2020. AR 1–6. On April 13, 2020 Plaintiff filed a complaint in this Court. Doc. 1.

### III. Factual Background

#### A. Plaintiff's Testimony

Plaintiff previously worked part-time at Lowe's counting money, reconciling the tills and entering data on a computer. AR 43–45. She lifted 10 to 20 pounds, sat 70 percent of the workday, and stood or walked 30 percent of the workday. AR 44. Prior to Lowe's she worked at Foster Farms for 20 years. She initially worked as a poultry inspector where she lifted more than 50 pounds, pushed/pulled more than 100 pounds, and stood 95 percent of the workday. AR 45, 47, 54. She was injured on the job and transferred to a quality assurance role involving data entry, filing, ordering supplies and printing reports. AR 49–51, 54. She lifted more than 20 pounds but less than 50 and worked mostly in a seated position. AR 51–52.

She struggled with impairments in both knees, shoulders, cervical spine and lumbar spine. She underwent two arthroscopic knee surgeries and was scheduled for knee replacement surgery. AR 55. She tore her right rotator cuff twice and underwent metal anchor implantation surgery. AR 55–56. She had left shoulder bursitis and struggled reaching out or up. AR 56. She had difficulty dressing, reaching overhead, and she had to sit to shower. AR 56–57. She did minimal chores around the house. She had difficulty ringing out a towel or stirring soup. AR 58. She used an electric cart at the grocery store or left the shopping to her daughter. AR 58–59. She could drive for 30 minutes before changing positions. AR 59. She used a cane and walker daily. AR 58.

#### B. Vocational Expert

The VE classified Plaintiff's past employment as a quality control technician, administrative assistant and cashier II at the heavy, medium and light exertional levels, respectively (as performed). AR 62. All three jobs were classified at the light exertional level as generally performed. The ALJ questioned the VE regarding a hypothetical individual with Plaintiff's vocational profile who could perform work at the light exertional level with various postural and

manipulative limitations, most notably a limitation to frequent handling with the left/non-dominant extremity. AR 62. The VE testified that such an individual could perform all three of Plaintiff's past jobs as generally performed, and could perform the job of cashier II as actually performed. AR 62. The ALJ posed a second hypothetical with slightly different postural limitations and removed the limitation to frequent handling with the left/non-dominant extremity. AR 63. The VE testified that his answers would not change. AR 63. As a third hypothetical, if the individual had to wear an Aspen (cervical) collar, all work would be precluded. AR 64. As a fourth hypothetical, if the Aspen collar limitation were removed but the individual also required a cane for balance when ambulating over 50 yards or on uneven terrain, no past work would be available but other jobs existing in significant numbers in the national economy would be. AR 65. Specifically, Plaintiff's skills in office work, computer work and data entry would be transferrable to the sedentary jobs of receptionist, order taker and typist clerk. AR 65. As a fifth hypothetical, if the limitation to frequent handling with the left/non-dominant extremity were added back in, the same jobs would be available. AR 66. If the individual were off task more than 10% of the day, no work would be available. AR 66. If the limitation to frequent handling was reduced to occasional handling, no work would be available. AR 67. The VE testified that none of his answers conflicted with the DOT. AR 66.

### C. <u>Medical Records</u>

Plaintiff's claims of error involve only a select few medical records. An Agreed Upon Medical Examiner's report relating to Plaintiff's workplace injury states that her "dominant arm is the left one." AR 661. November 18, 2016 emergency room notes reflect that Plaintiff was left-handed. AR 346. In contrast, a March 28, 2017 physician's treatment note refers to Plaintiff as right-handed. AR 523.

Plaintiff underwent left elbow surgery on January 14, 2017 for left medial epicondylitis and left cubital tunnel syndrome. AR 391–405, 438–439. Post-surgical medical records reflect continued complaints of elbow pain, reduced shoulder range of motion, and an incomplete MRI report revealed abnormalities of the acromioclavicular joint compressing the rotator cuff, bone-to-bone contact of the acromioclavicular joint, tendinopathy of the rotator cuff and degenerative

changes in the ligaments attaching the shoulder to the biceps tendons. AR 1139, 1141, 1145, 1147, 1166.

### D. Medical Opinions and Administrative Findings

Non-examining state agency medical consultants J. Desai, M.D., and E. Wong, M.D., reviewed Plaintiff's medical file at the initial and reconsideration levels, respectively. Both concluded that Plaintiff could perform light exertional work with limited pushing and pulling with bilateral upper and lower extremities as well as other postural and manipulative limitations. AR 80–81; 95. The ALJ accorded these opinions partial weight except insofar as they failed to include handling limitations to account for Plaintiff's elbow impairment. AR 24.

The agency did not obtain a consultative examination. Plaintiff did not submit opinion evidence from a physician or other source.

### IV. Standard of Review, Generally

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks omitted).

If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112

F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

## V. <u>The Disability Standard</u>

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

> 42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy, given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

## VI. **The ALJ's Decision**

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of April 1, 2016. AR 19. At step two the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine; arthritis of the lumbar spine; chondromalacia and meniscal tears of bilateral knees, status post arthroscopic repairs of both knees; left shoulder bursitis, status post arthroscopic repair; right shoulder osteoarthritis; epicondylitis and cubital tunnel syndrome of the left elbow, status post-surgical repair; trochanteric bursitis of the bilateral hips; and osteoarthritis. AR 19. The ALJ found that Plaintiff's gastroesophageal reflux disease (GERD), diabetes, hypertension, obesity, nodular goiter, depression and anxiety were non-severe. AR 19. At step three the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 21.

Prior to step four the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that, prior to October 26, 2017, Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) and 20 C.F.R. 416.967(b), with some postural and manipulative limitations, most notably a limitation to frequent handling with her left/non-dominant hand. AR 25. The ALJ also found that, beginning on October 26, 2017, Plaintiff had the RFC to perform light work with some postural and manipulative limitations, no limitation to frequent handling with the left hand, but a requirement that she use a cane for balance whenever ambulating over 50 yards or on uneven terrain. AR 25. At step four the ALJ found that Plaintiff could perform her past relevant work prior to October 26, 2017 but not thereafter. AR 27. At step five the ALJ found that, beginning October 26, 2017, Plaintiff could perform other jobs existing in significant numbers in the national economy, namely: receptionist, order taker and typist clerk. AR 28. Accordingly, the ALJ found that Plaintiff had not been under a disability since her alleged disability onset date of April 1, 2016. AR 29.

## VII. **Issues Presented**

Plaintiff contends that the RFC for the period prior to October 26, 2017 was not supported by substantial evidence because the ALJ overlooked evidence that Plaintiff's left hand was her

dominant hand (an error which undermined her hypothetical to the VE). Second, Plaintiff contends the RFC was not supported for the period beginning October 26, 2017 because the ALJ overlooked evidence of continued elbow limitations following her surgery--that the evidence may have warranted a limitation to occasional handling, and that such a limitation would have eliminated available work according to the VE. Br. at 23–25, Doc. 16.

### A. Applicable Law

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity. *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins*, 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799

F.2d 1403, 1408 (9th Cir. 1986)).

> Pursuant to SSR 00-4p:
>
> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

The conflict must be "obvious or apparent" to trigger the ALJ's obligation to inquire further. *Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th Cir. 2017).

### B. Analysis

#### 1. RFC for the Period Before October 26, 2017

Plaintiff cites two medical records noting she is left-handed and one record noting she is right-handed. Br. at 23 (citing AR 661, 346, 523). Plaintiff therefore contends the ALJ should have conducted an appropriate inquiry to resolve the ambiguity. *Id.* (citing *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)). Plaintiff contends the ALJ's failure to resolve the ambiguity rendered her hypothetical to the VE improper insofar as the hypothetical involved a limitation to frequent handling with the left/non-dominant hand, when the record is ambiguous as to handedness. Plaintiff's first argument concludes after one page with no attempt to explain how a different finding as to handedness would have affected her ability to perform her past relevant work or other work existing in the national economy, all of which require no more than frequent handling (without explicit regard to handedness) consistent with Plaintiff's RFC.

Defendant appropriately argues in response that Plaintiff did not meet her burden to establish harmful error. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("The burden

of showing that an error is harmful normally falls upon the party attacking the agency's determination."); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless"); *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim . . .") (citation omitted).

Defendant also argues that handedness would not in fact impact Plaintiff's ability to perform the identified jobs under the DOT because "[e]ach of Plaintiff's three past relevant occupations . . . require only frequent handling with *either hand*, regardless of handedness." Resp. at 10 (citing DOT 529.387-030 (quality control technician); 219.362-010 (administrative clerk); 211.462-010 (cashier II)). In reply, Plaintiff cites *Lamear*, arguing that Defendant offered an inaccurate statement of law, namely that the identified jobs require "frequent handling with *either hand*, regardless of handedness." The first half of Defendant's statement does run contrary to *Lamear*. However, that does not address the validity of Plaintiff's claim of error, a claim which centers around the issue of handedness, not on the distinction between unilateral and bilateral handling (the issue in *Lamear*).

*Lamear* does not support Plaintiff's argument because it had nothing to do with handedness. In *Lamear*, the plaintiff was limited to occasional handling with his left, non-dominant hand, but the VE testified he could perform jobs requiring frequent handling. *Lamear v. Berryhill*, 865 F.3d 1201, 1204 (9th Cir. 2017). The court found this to be an apparent conflict. *Id.* The Commissioner argued that the error was harmless because the plaintiff had full use of his right hand and the DOT did not specify that the handling requirement was bilateral. *Id.* The court rejected the argument finding no basis to presume that the DOT's handling requirement was unilateral. *Id.* The court further explained that, based on the DOT's descriptions of office helper, mail clerk and parking lot cashier, it was likely and foreseeable that frequent bilateral handling would be necessary to perform the jobs. *Id.*

In sum, the jobs in *Lamear* and in the case at bar both required frequent handling under the DOT's job descriptions. *Lamear* instructs that, unless a common sense understanding of a job's requirements indicates otherwise, a DOT job description requiring frequent handling means

9

frequent on the right and frequent on the left (i.e. frequent bilateral handling). The Plaintiff in *Lamear* could perform frequent handling on the right, but not on the left. Therefore, he could not perform the identified jobs. Here, Plaintiff could perform frequent handling on the right and frequent handling on the left. Accordingly, she could perform the identified jobs. Nothing in *Lamear* or the DOT suggests that handedness changes the outcome. Indeed, *Lamear* strongly suggests the opposite. Thus no conflict existed here between the VE's testimony and the DOT.

### 2. RFC for the Period Beginning October 26, 2017

In the RFC for the period beginning October 26, 2017, the ALJ omitted any handling limitation in Plaintiff's left hand because "the claimant had already undergone elbow surgery and required no other significant treatment for her left elbow." AR 27. Plaintiff contends the ALJ overlooked evidence of continued post-surgical elbow limitations including continued reports of pain to her physician, and "objective findings of decreased range of shoulder motion, and an incomplete report of an MRI conducted on August 10, 2018 revealing abnormalities of the acromioclavicular joint compressing the rotator cuff, bone-to-bone contact of the acromioclavicular joint, tendinopathy of the rotator cuff, and degenerative changes in the ligaments attaching the shoulder to the biceps tendons." Br. at 24 (citing AR 1139, 1141, 1145, 1147, 1166).

Had the ALJ included a limitation to frequent handling with the left hand for the period beginning October 26, 2017, the outcome would not have changed because the jobs identified by the VE at step five required no more than frequently handling, just like Plaintiff's past relevant work at step four. *See* DOT 237.367-038 (receptionist), 249.362-026 (order taker), 203.362-010 (typist clerk).

Plaintiff also suggests that her medical records post elbow surgery warranted a limitation to occasional handling, a limitation which the VE testified would be work preclusive. But Plaintiff offers no support or explanation to bridge the gap between her impairments on the one hand, and a hypothetical work-related limitation on the other. *See Matthews v. Shalala*, 10 F.3d 678, 680 (9th

Cir. 1993) ("The mere existence of an impairment is insufficient proof of a disability" because the "claimant bears the burden of proving that an impairment is disabling").

Nothing on the face of the above-cited medical records supports the notion that Plaintiff could perform handling with her left hand for only 1/3 of an 8-hour day (occasional), as opposed to 2/3 of an 8-hour day (frequent). Nor does Plaintiff offer any testimonial or opinion evidence to that effect from a treating physician, other medical source, third party or otherwise. The only opinion evidence of record is from the non-examining state agency physicians who assessed no handling limitations, an opinion which supported the ALJ's RFC. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (noting that the opinion of a non-examining physician (such as a state agency physician) may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record.").

Moreover, with the exception of elbow pain, the post-surgical medical records cited by Plaintiff (as described above) relate to impairments of the shoulder, A/C joint, and rotator cuff, impairments which seem more logically tethered to weight lifting and reaching capacities (for which the ALJ assessed substantial limitations) than to the finer manipulation capacity of handling. Similarly, Plaintiff's testimony was more supportive of substantial reaching limitations than handling limitations. She described her torn rotator cuff, shoulder bursitis, difficulty reaching out or up, inability to wear items that require overhead reach, and the need to bring her head down to her hands to style her hair. AR 17. She did testify that ringing a towel or stirring soup caused pain, must be done slowly, and took a long time, not that she was unable to perform such activities for more than 1/3 of an 8-hour day.

In short, Plaintiff's one-page argument offers no explanation as to how the above-cited medical records, or any other evidence of record, would support a limitation to occasional handling. The possibility that her post-surgical elbow impairments could have been disabling is not

11

dispositive as the Commissioner does not have the burden of disproving disability. Rather, Plaintiff has the burden of proving disability, and she did not meet that burden.[2] *See Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim . . .") (citation omitted). *See Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) ("The claimant carries the initial burden of proving a disability.") (citation omitted).

### VIII. Order

For the reasons stated above, the Court finds that substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled. Accordingly, Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is denied. The Clerk of Court is directed to enter judgment in favor of Defendant Andrew Saul, Commissioner of Social Security, and against Plaintiff Joann Linan.

IT IS SO ORDERED.

Dated: **June 17, 2021**         **/s/ Gary S. Austin**
                          UNITED STATES MAGISTRATE JUDGE

---

[2] Plaintiff argues for the first time in her reply brief that the ALJ failed to consider Plaintiff's polyarthritis and chronic osteoarthritic changes when concluding that the post-October 26, 2017 RFC required no handling restrictions. Reply at 5, Doc. 20 (citing AR 26). The argument fails for the same reasons discussed above, namely that Plaintiff identifies no evidence supporting the notion that these impairments precluded her from handling more than 1/3 of an 8-hour day. Moreover, this argument was raised for the first time in reply, a reply which contains a more detailed analysis overall than her opening brief. That material should have been included in the opening brief. *See Thrasher v. Colvin*, 611 F. App'x 915, 918 (9th Cir. 2015) (unpublished) (noting that arguments not raised in the opening brief are waived).